IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

HECTOR MANUEL BOSSIO, JR., )
)
Plaintiff, )
)
v. ) Case No.: 3:16-cv-840-ECM-WC
)
HEATH TAYLOR., *et al.*, )
)
Defendants. )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I. INTRODUCTION

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Hector Manuel Bossio, Jr. ("Bossio"), a pre-trial detainee confined in the Russell County Jail, asserting that his initial placement and continued confinement in the "max dorm" is violative of his constitutional rights, that the defendants acted with deliberate indifference to his safety, and that the jail law library is inadequate. Bossio names Russell County Sheriff Heath Taylor ("Sheriff Taylor"), and Deputy Sheriff Lieutenant Steve Johnson ("Lieutenant Johnson") as defendants (collectively "the defendants"). He seeks monetary and injunctive relief for the alleged violations of his constitutional rights.

The defendants filed an answer, special report, supplemental special reports and supporting evidentiary materials addressing Bossio's claims for relief. In these documents, the defendants deny violating Bossio's constitutional rights.

After the defendants filed their initial special report, the court issued an order directing Bossio to file a response to the arguments set forth by the defendants in the report

and advising him that his response should be supported by affidavits or statements made under penalty of perjury and other appropriate evidentiary materials. Doc. 4 at 3. The order specifically advised the parties that "at some time in the future the court may treat the defendants' report . . . as a dispositive motion[.]" *Id.* In addition, the order specifically cautioned the parties that "unless within fifteen (15) days from the date of this order a party files a response in opposition which presents sufficient legal cause why such action should not be undertaken . . . the court may at any time [after expiration of the time for the plaintiff filing a response to the order] and without further notice to the parties (1) treat the special reports and any supporting evidentiary materials as . . . motion for summary judgment, . . . and (2) after considering any response as allowed by this order, rule on the motion in accordance with the law." Doc. 4 at 4 (emphasis in original).

Bossio filed several responses to the reports, including unsworn responses on December 29, 2016 (Doc. 31, 33), December 30, 2016 (Doc. 38), January 20, 2017 (Doc. 49), January 31, 2017 (Doc. 52), and May 1, 2017 (Doc. 59).[1] He also filed sworn affidavits on January 9, 2017, (Doc. 49-4, 49-5, 49-6), and January 31, 2017 (Doc. 52).[2]

---

[1] This court declines to consider Bossio's unsworn statements included within his responses to the special report because these responses were not sworn statements or signed with an averment that they were made under penalty of perjury. *See* 28 U.S.C. § 1746; *Holloman v. Jacksonville Housing Auth*., 2007 WL 245555, *2 (11th Cir. Jan. 20, 2007) (noting that "unsworn statements, even from *pro se* parties, should not be considered in determining the propriety of summary judgment."); *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (holding that "the court may not consider [the pro se inmate plaintiff's unsworn statement] in determining the propriety of summary judgment.").

[2] Bossio also attached the sworn affidavits of other inmates to his response to the defendant's third supplemental special report. (Doc. 59-1 & 59-2.)

Pursuant to the directives of the orders entered in this case, the court deems it appropriate to treat the defendants' reports as a motion for summary judgment. Upon consideration of the defendants' motion for summary judgment, the evidentiary materials filed in support thereof, and the sworn complaint, the court concludes that summary judgment is due to be granted in favor of the defendants.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed. R. Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of

proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). This court will also consider "specific

facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves the same purpose of an affidavit for purposes of summary judgment). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986), Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the supporting party's position will not suffice[.]" *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant, materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. At the summary judgment stage, this court should accept as true "statements in [the plaintiff's] verified complaint, [any] sworn response to the officers' motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 2019 WL 1785355, *3 (11th Cir. April 24, 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and uncorroborated statements "based on personal knowledge or observation" set forth in a verified complaint or affidavit may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but that alone does not permit [the court] to disregard them at the summary judgment stage . . . . Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving."). However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Chamption Int'l Corp*., 907 F.2d 1077, 1081 (11th Cir. 1990).

In addition, conclusory allegations based on purely subjective beliefs of a plaintiff and assertions of which he lacks personal knowledge are likewise insufficient to create a genuine dispute of material fact. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). In cases where the evidence before the court which is admissible on its face or

which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323–24; *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525. Thus, a plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case. Here, after a thorough and exhaustive review of all the evidence which would be admissible at trial, the court finds that Bossio has failed to demonstrate a genuine dispute of material fact in order

to preclude entry of summary judgment in favor of the defendant. *See Matsushita*, 475 U.S. at 587.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After this review, the court finds that Bossio has failed to demonstrate a genuine dispute of material fact in order to preclude the entry of summary in favor of the defendants.

## III. FACTS[3]

### A. The Disciplinary and Housing Assignment

On January 7, 2016, Bossio entered the Russell County Jail as a pretrial detainee on charges of transporting stolen property, trafficking in methamphetamine, and illegal possession of a firearm. He was initially placed in K-block Room 10. Some of the other inmates in the dorm acted in a threatening manner toward him, but "nothing serious" happened. Doc. 49-6 at 1. Bossio submitted requests to the jailers requesting that he be moved out of the K-block. While he awaited a response from jail officials, Bossio's situation remained relatively the same "without getting any worse" until the day jailers moved inmate Joe Brown ("Brown"), a member of the "Gangster Disciples," to K-block. Doc. 49-6 at 1. Brown contacted his fellow gangster inmates and began threatening Bossio. Thereafter, Bossio submitted additional requests to be moved to another cell block.

Fearing for his safety, Bossio decided to take steps to protect himself. While the control booth was empty, Bossio removed several feet of conduit from the wall next to his

[3] The facts are construed in the light most favorable to the plaintiff, as this court must do. *See Beard*, 548 U.S. at 525.

cell. He fashioned part of the conduit into a weapon and hid it on his person when he went to the dayroom. A couple of days later, on January 25, 2016, he was moved from K-block to D-block. Upon gathering his belongings, Bossio decided to leave behind all of the conduit in the k-block cell.

For a few days, Bossio's situation improved and Bossio did not have problems with any of the other inmates in D-block. His problems worsened, however, on January 29, 2016, when Corporal Anderson moved him to I-block. Bossio explained to Corporal Anderson that I-block was too close to K-block. Shortly after Bossio entered I-block, Brown signaled through a window in K-block that he would put "money on the books" of any inmate who slapped Bossio. Doc. 49-6 at 2. In front of a jailer, Bossio dared the entire dorm to slap him, but the other inmates left him alone. *Id*.

During the early morning hours of February 5, 2016, officers conducted a shakedown of K-block. In Bossio's former cell, the officers found 3 pieces of conduit pipe, approximately one foot in length. The inmates in the K-block cell explained that Bossio had removed the piping from the wall. Shortly thereafter, the jail was locked down and the jailers moved Bossio from the I-block to the maximum-security dorm in L-block ("the L max block").

The following day, Sergeant Weatherly escorted Bossio to Lieutenant Johnson's office. When Lieutenant Johnson asked Bossio about the conduit, Bossio told him that he found the conduit in his cell in K-block. Lieutenant Johnson became angry and played a video of the incident. Upon seeing the video, Bossio admitted that he had removed the conduit from the wall and explained that he did so to defend himself. Lieutenant Johnson

asked, "How would you like an escape charge to go with your drug trafficking charge?" Doc. 49-6 at 2. Although Bossio reminded Lieutenant Johnson of the many requests he had submitted indicating his problems with other inmates, Lieutenant Johnson accused him of attempting to escape. As Bossio pleaded with him, Lieutenant Johnson became angry and said, "You people ain't gonna come to my jail and pull an 'El Chappo' in here. You are in that max cell and you will stay in that max cell for the duration of your stay in my jail." Doc. 49-6 at 3.

After the expiration of the 30-day sanction, Bossio remained in the maximum-security block of the Russell County Jail until his transfer to another facility in May 2018. During Bossio's incarceration in the Russell County Jail, inmates in the max dorm were "locked down" twenty hours a day in one-man isolation cells, as well as during church services and visitation, and they received their meals through a tray flap.

**The Inmate Request Forms and Grievances**

Bossio submitted numerous requests and grievances during his detention in the Russell County Jail.[4] For example, on January 15, 2016, Bossio reported:

> I feel outnumbered here in k. No one has tried me the wrong way but I know it's coming. I don't want to have to hurt anyone. I also do not want to get hurt by anyone. Is there a dorm that has a couple of Latino people that I can possibly be moved to? ….

Doc. 23-12 at 2. A jailer responded, "Will look into it." *Id*.

Later that day, Bossio submitted a second request, in which he reported:

[4] Bossio frequently submitted inmate requests and grievances throughout his confinement in the Russell County Jail. *See* Doc. 20, Defs' Ex. C, pp. 1–350. Only the most pertinent requests and grievances related to the claims set forth in the Complaint are summarized in this Recommendation.

> I have been ganged up on by some of the inmates in this dorm on several occasions. I would like to know if it's possible for me to be placed in a dorm with people of my own race…. Please move me with some Latinos.

*Id.* at 3. A jailer responded, "There is only 2 in the whole jail at this time…. I would like to know the names and possible dates and times when I might be able to see some of what you are saying on video just to back your story up." *Id.*

On January 15, 2016, Bossio submitted a third request, in which he reported that "they have video [and] I'm only trying to keep from hurting anyone or getting hurt if you [could] please move me into a pod with at least one more Latino that would help me out and stop any future problems." *Id*. at 4. A jailer responded, "We are moving one into your block." *Id.*

On January 17, 2016, Bossio sent a request, stating "if they go too far and I hurt someone I just want it on record that I tried to avoid any type of situation…." *Id*. at 5. A jailer responded, "Who are you talking about?" *Id*.

On January 18, 2016, Bossio sent a request, in which he complained:

> You moved a Latin person in here that is friends with the people I have problems. He is not even a real Latino he doesn't speak Spanish. Can you please move me to a dorm with Spanish people?

*Id*. at 6. The jailer responded, "We do not have blocks like that, they are all mixed." *Id*.

On January 24, 2016, Bossio submitted a grievance to Sergeant Thomas, stating "Sgt. Thomas please help me," and Sergeant Thomas responded, "ok." *Id*. at 7. Later that day, Bossio submitted an additional grievance, in which he complained:

> Sgt. Thomas I have been complaining about the racial hostility against me in this dorm. I am very outnumbered and do not feel safe here. The other

> Spanish person here actually knows all these people from the streets and seems to add to the problem. We don't get along with Puerto Ricans.

*Id*. at 8. After Sergeant Thomas referred the grievance to a jailer, the jailer responded, "I will check into it." *Id*.

On February 11, 2016, Bossio submitted a grievance complaining that "[Sergeant] Thomas . . . den[ied] [him his] federal constitutional right to access to the law library." Doc. 20-3 at 11. The following day, Bossio submitted an additional grievance complaining that he was "being denied due process." *Id*. at 12.

On July 1, 2016, Bossio submitted a grievance, in which he stated:

> Lt. Johnson
>
> I'm writing you because I just wanted to let you know that when I 1st got here I thought this jail was like any other 1 but it's not. People here tell about everything to the point that you are used to that. I usually keep my mouth shut but the truth is that I'm tired of max cells and I'm here because someone played us both. Joe Brown told you that I tried to escape when I didn't that had to [be] Jimmy Johnson the guy that was in there that was set to the fed. If I was trying to escape y would I try to kite myself out of that dorm. The truth is that I was going to use that pipe on Joe. He and I have problems over his girl. He is also the one who broke the t.v. in k dorm. He told that young buck on lock down till he shipped. That man played you and me. I am from ATL. I thought I had to protect myself because I am used to being the only one hisp in any dorm I am in and over there it's hard time how was I supposed to know this place was so laid back. I am sorry for [breaking] the piece of conduit I won't do anything like that again can you please give me another change and put me back….

Doc. 26-2 at 2.

On July 6, 2016, Bossio submitted an additional grievance, complaining:

> I have been to every max dorm in this jail. Why does this dorm get treated differently than all the other dorms. We are the last to go to the yard so half the time we don't get to go at all…. We are always the last for the store….

> But what I am writing about now is [] I have been here at least a month and the barber has only been here once….

Doc. 20-3 at 25. A jailer responded, "This has been fixed." *Id*.

On August 31, 2016, Bossio submitted a grievance, complaining:

> I was given 15 days lock down then it was upped to 30 days without anyone telling me or any disciplinary report for any of it. I have tried to talk to Sergeant Schroeder about it. I want off lock down since no disciplinary form was turned in or show to me at all.

Doc. 20-3 at 28; Doc. 38-6 at 1. The jailer responded, "There was a form filled out." *Id*.

## IV. DISCUSSION

### A. Requests for Injunctive Relief

Bossio is no longer incarcerated at the Russell County Jail. The transfer or release of an inmate renders moot any claims for injunctive or declaratory relief. *See Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and docketing records before the court that Bossio is no longer incarcerated at the Russell County Jail, his request for equitable relief is moot.

### B. Equal Protection

To the extent Bossio asserts that the defendants engaged in racial discrimination by lodging a disciplinary action against him "because [he is] the same race as [the] superstar status mega drug lord, El Chappo" (Doc. 1, Pl's Comp., p. 4), he has failed to demonstrate a genuine dispute of material fact.

"Despite the tendency of all rights 'to declare themselves absolute to their logical extreme,' there are obviously limits beyond which the equal protection analysis may not be pressed. . . . The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,'. . . nor does it require the State to 'equalize [prison] conditions.'" *Ross v. Moffitt*, 417 U.S. 600, 611–612 (1974) (citations omitted); *Hammond v. Auburn University*, 669 F. Supp. 1555, 1563 (M.D. Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally."). In order to present a claim of discrimination cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001); *Damiano v. Fla. Parole and Prob. Comm'n*, 785 F.2d 929, 932–33 (11th Cir. 1986)." *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318–19 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact. . . . Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–265 (1977). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also*

*Hernandez v. New York*, 500 U.S. 352, 359 (1991). Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987).

Bossio fails to identify any similarly situated inmate who received differential favorable treatment from the defendants or the disciplinary hearing officer. Thus, Bossio's "equal protection claim necessarily fails first because he has not [asserted] that he was treated differently from other, similarly situated prisoners." *Sweet*, 467 F.3d at 1319. Consequently, the conclusory allegation of an equal protection violation entitles Bossio to no relief in this cause of action.

C. **Access to the Court**

To the extent Bossio asserts that the Russell County Jail law library is insufficient, his claim must fail. The law directs that incarcerated persons are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified and limited the right to assistance recognized in *Bounds*. Specifically, the Court held that "an inmate alleging a violation of *Bounds* must show actual injury" arising from the alleged inadequacies in the law library, legal assistance program or access provided by officials. *Lewis*, 518 U.S. at 349. In identifying the particular right protected by *Bounds*, the Court explained that "*Bounds* established no . . . right [to a law library or to legal assistance]. The right that *Bounds* acknowledged was the (already well-established) right of ***access to the courts***. . . . [P]rison law libraries and

legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id*. at 350–351 (emphasis in original) (citations omitted). The Court further opined *Bounds* did not require "that the State . . . enable the prisoner to ***discover grievances***, and to ***litigate effectively*** once in court. . . . To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not something] . . . the Constitution requires." *Id*. at 354 (emphasis in original).

The Court similarly determined that the mere claim of a systemic defect, without a showing of actual injury, did not present a claim sufficient to confer standing. *Id*. at 349. Moreover, *Lewis* emphasized that a Bounds violation is related to the lack of an inmate's capability to present claims. 518 U.S. at 356. "*Bounds* . . . guarantees no particular methodology but rather the conferral of a capability — the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts. When any inmate . . . shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates" the requisite actual injury. *Lewis*, 518 U.S. at 356. Finally, the Court discerned that the injury requirement is satisfied only when an inmate has been denied "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his] convictions or conditions of confinement. . . . [I]t is that capability, rather than the capability of turning pages in a law library, that is the touchstone." *Id*. at 356–357. "[T]he Constitution does not require that

prisoners . . . be able to conduct generalized research, but only that they be able to present their grievances to the courts — a more limited capability that can be produced by a much more limited degree of legal assistance." *Id*. at 360. The Court admonished that federal courts should allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts. *Id*. at 356. A federal district court must "scrupulously respect[] the limits on [its] role, by not . . . thrust[ing] itself into prison administration and instead permitting [p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional requirements." *Id*. at 363 (internal quotations and citation omitted).

Bossio presents only a conclusory allegation of a constitutional violation and fails to allege any shortcomings with respect to the legal access provided to him during his confinement at the Russell County Jail which adversely affected his efforts to pursue his claims. Instead, throughout the proceedings in this case, Bossio has demonstrated he is both proficient and prolific at presenting and arguing claims of his choice to this court and has filed all pleadings and documents necessary to the disposition of this case. Bossio has utterly and completely failed to come forward with any evidence that the actions about which he complains deprived him of the capability of pursuing claims in this or any other court. Hence, Bossio does not establish he suffered the requisite injury, *see Lewis*, 518 U.S. at 356, and the defendants are therefore entitled to summary judgment on the legal access claim. *Barbour v. Haley*, 471 F.3d 1222, 1225 (11th Cir. 2006) (access to courts claim fails because plaintiff did not show any actual injury); *Chandler v. Baird*, 926 F.2d 1057 (11th

Cir. 1991) (An inmate is entitled to no relief on an access to courts claim in "the absence of any indications of ultimate prejudice or disadvantage.").

**D. Due Process**

Bossio asserts that the defendants violated his constitutional right to due process. Specifically, he challenges the disciplinary action lodged against him in which he received 30 days in the L-max cell and his continued confinement in maximum security cells after the expiration of the sanction.

1. Qualified Immunity Basics

The defendants assert they are entitled to qualified immunity on Bossio's due process claims against them in their individual capacities for monetary damages. Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but rather immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citations omitted). To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Defendants here were acting within the course and scope of their discretionary authority when the incidents occurred. Bossio must, therefore, allege facts

that, when read in a light most favorable to him, show that Defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, a plaintiff must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty*., 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, ___ U.S. ___, 132 S. Ct. 2088, 2093 (2012) (quotation marks and citations omitted). "Clearly established law" means (1) "a materially similar case has already been decided"; (2) "a broader, clearly established principle that should control the novel facts of the situation"; or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (quotation marks and citations omitted). The controlling authority is from "the United States Supreme Court, the Eleventh Circuit, or the highest court in the relevant state." *Id*. at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quotation marks and citations omitted). The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210. "Exact factual identity with the previously decided case is not

required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011). If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (citing *Pearson*, 555 U.S. at 241–42).

2. <u>Applicable Legal Standard for a Pretrial Detainee</u>

The actions about which Bossio complains occurred upon placement in the Russell County Jail in January 2016 until the filing of the instant complaint in October 2016. It is undisputed that Bossio was a pretrial detainee at the time relevant to the complaint. Bossio's claims are therefore subject to review under the Due Process Clause of the Fourteenth Amendment which prohibits the imposition of punishment on those who have not yet been convicted of a crime, rather than the Eighth Amendment's prohibition against cruel and unusual punishment which governs claims of convicted inmates. *Bell v. Wolfish*, 441 U.S. 520 (1979); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners."). "[I]n regard to providing pretrial detainees with such basic necessities as food, living space, and medical care, the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986). As to these

conditions claims, the Eleventh Circuit has long held that "the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." *Cottrell*, 85 F.3d at 1490; *Hamm*, 774 F.2d 1574 (holding that for analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment.); *Tittle v. Jefferson County Commission*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing that "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

3. Procedural Due Process – The Disciplinary Confinement

Bossio asserts that, in February 2016, Sheriff Taylor and Lieutenant Johnson violated his procedural due process rights when they lodged disciplinary actions against him by moving him to the L-max dorm based on allegations that he attempted to escape. The defendants, however, assert that Bossio received notice and a disciplinary hearing shortly after his placement in the L-max dorm.

On August 29, 2016, the Eleventh Circuit Court of Appeals examined well-established Supreme Court precedent concerning pretrial detainees and their entitlement to due process safeguards in jail settings, holding for the first time that "'a [pretrial] detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.'" *Jacoby v. Baldwin County*, 835 F.3d 1338, 1349 (11th Cir. 2016) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). The Court held that, unlike a convicted prisoner,

> a pretrial detainee is not required to prove that his conditions of confinement either "exceed[] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force" or "impose[] atypical

> and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin* [*v. Conner*], 515 U.S. [472,] 484 [(1995)] . . . to be entitled to the process governed by *Wolff* [*v. McDonnell*, 418 U.S. 539 (1974)]. Rather, a pretrial detainee is entitled to a due process hearing before being subjected to "conditions that amount to punishment." *Bell*, 441 U.S. at 535, 99 S. Ct. at 1872.[]

835 F.3d at 1348. Thus, if "a pretrial detainee[] is punished for violating a jail rule, there must be a due process hearing to determine what rule he violated." *Id*.

To comport with *Wolff* safeguards, a pretrial detainee must receive:

> (1) advance written notice of the charges; (2) a written statement of the reasons for the disciplinary action taken; and (3) the opportunity to call witnesses and present evidence "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."

*Jacoby*, 835 F.3d at 1351 (quoting *Wolff*, 418 U.S. at 564–66).

It is arguable that Bossio received notice and was provided the opportunity to be heard before the hearing officer imposed the 30-day sanction. The defendants submitted the affidavit of Michael Schroeder ("Sergeant Schroeder"), the disciplinary officer for the Russell County Jail, in which he stated that, on February 8, 2016, he received a report regarding Bossio's attempted escape and held a disciplinary hearing. Sergeant Schroeder maintained that, after he explained to Bossio the reason for the hearing, Bossio refused to sign the disciplinary form. Consequently, he sentenced Bossio to 30 days in lockdown as requested by Lieutenant Johnson.

Bossio disputes Sergeant Schroeder's version of the facts and asserts that he did not receive notice of a disciplinary report and was unaware of the opportunity for a hearing. Bossio, however, does not dispute that he was escorted to Johnson's office and that Johnson showed him a video, questioned him about the incident, and accused him of escape. Doc.

1 at 3. The undisputed facts also indicate that, during the meeting, Bossio denied the accusation and explained his reasons for removing the conduit from the wall.[5] *Id*.

The Notice of Disciplinary Hearing form indicates that, on February 8, 2016, jail officials "Lt. & SSgt" charged Bossio with "Attempting to Escape" and requested 30 days of disciplinary action against him. Parts of the form were either not completed or were left blank, including sections indicating the date set for the hearing, the inmate signature line, whether the disciplinary officer did or did not find the inmate in violation of the charge, and whether the inmate either requested or waived his right to appear before the disciplinary hearing officer. (Attach. to Defs' Special Report, Defs' Exh. 9; Doc. 23-9.) At the bottom of the form, however, the disciplinary hearing officer checked boxes indicating that all privileges, including the commissary, telephone, television, visitation, and classification, were denied. The form also indicated that the "[s]anctions were imposed for a period of 30 days, commencing on 8 Feb, 2016" and that "[a]ll disciplinary inmates

[5] To the extent Bossio challenges the veracity of the information underlying the disciplinary charge, the defendants maintain that the information was true and correct. More importantly, Bossio does not deny that he was the person seen removing conduit from the wall on the videotape. *See Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991) (holding that reliance on ***admittedly false information*** to deny a prisoner consideration for parole was arbitrary and capricious treatment violative of the Constitution). The record indicates that the defendants believed the information, including the videotape and jail records indicating a prior attempted escape at another jail, was true and, therefore, reliance on this information did not infringe on any of his constitutional rights. Of specific importance, there is no admission by the defendants that the information used to lodge a disciplinary sanction against him was false, fabricated, incorrect, or erroneous. Bossio has failed to come forward with any evidence indicating that the defendants knowingly relied on false information in disciplining him. Moreover, Bossio's conclusory allegation regarding the use of false information does nothing more than raise the possibility that information in his records may be false and this mere possibility fails to provide a basis for relief. *Monroe*, 932 F.2d at 1142; *Jones v. Ray*, 279 F.3d 944 (11th Cir. 2001) ("[P]risoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim."). The record in this case establishes that the defendants did not rely on ***admittedly*** false or fabricated information. Consequently, Bossio is entitled to no relief as a matter of law and entry of summary judgment in favor of the defendants on this claim is warranted.

are on 23-hour lockdown and come out for 1 hour a day." *Id*. In addition, the hearing officer noted, "8 March 16 off lock down." *Id*.

It is not necessary for this court to decide Bossio's procedural due process claim challenging the 30-day imposition of disciplinary sanctions, because, even if the court were to assume that the defendants failed to meet the *Wolff* factors, the defendants are entitled to qualified immunity with respect to this claim. In the present case, the events underlying Bossio's procedural due process claim occurred in February 2016, prior to *Jacoby*'s holding that pretrial detainees have a protected liberty interest sufficient to trigger due process protections prior to being punished for violating a jail rule. *See Jacoby*, 835 F.3d at 1348-50. Accordingly, the defendants are entitled to qualified immunity as to Bossio's procedural due process claim challenging the imposition of a disciplinary sanction without notice or a hearing. *See Jacoby v. Mack*, 755 Fed. Appx. 888, 905 (11th Cir. 2018) (determining that appellants were entitled to qualified immunity because, "prior to *Jacoby III*, it was not clearly established in this Circuit that pretrial detainees had a protected liberty interest sufficient to trigger due process protections prior to being punished for violating a jail rule").

4. Substantive Due Process Claim – Continued Confinement in Maximum Security

Bossio asserts that his continued confinement in a maximum-security cell violated his constitutional rights.[6] In *Bell v. Wolfish*, the Court held that a pretrial detainee "may not be punished prior to adjudication of guilt in accordance with due process of law." 441

[6] The record indicates that there are different maximum-security pods throughout the jail. It is difficult to discern the specific cells in which Bossio was confined after March 6, 2016. There is no dispute, however, that Bossio remained in maximum security until his transfer to another facility.

U.S. 520, 535 (1979). "Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention." *Bell*, 441 U.S. at 537. Restrictions or conditions may be constitutionally placed on pretrial detainees, provided that the restrictions further some legitimate governmental objective, such as ensuring a detainee's presence at trial or maintaining "safety, internal order, and security within the institution and make certain no weapons or illicit drugs reach detainees." *Bell*, 441 U.S. at 540.

Bossio alleges that inmates in the max dorm were "locked down" twenty hours a day in one-man isolation cells, as well as during church services or visitation, and they received their meals through a tray flap. Thus, this court must discern whether the max dorm constitutes unconstitutional punishment of a pretrial detainee or furthers some legitimate government objective. *See Bell*, *supra*. The deprivations Bossio alleges that are found in maximum security dormitories at the Russell County Jail do not present any "significant hardship" that can be deemed "atypical … in relation to the ordinary incidents of prisoner life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

It is also clear that Bossio's confinement in the maximum-security dorm furthered policies which maintain safety, internal order, and security within the jail. The policy of Russell County Sheriff Department provides that inmates placed in administrative segregation are "those who present a threat to themselves, others, property, security, or the order of the facility." Doc. 58-2 at 7. The policy further provides that "[s]egregated inmates, with the exception of those in disciplinary segregation, will have the same access to programs and services as general population inmates, unless privileges must be curtailed

to protect the inmate or others, or to maintain facility security" and that "[n]o person placed in administrative segregation will be denied the right to practice his religion, to medical treatment, food, or other basic necessities." *Id.* According to Lieutenant Johnson, Bossio remained in the maximum-security cell unit because: (1) he was charged with a Class A felony (trafficking methamphetamine); and (2) he stated that he planned to use the electrical conduit as a weapon. Doc. 26-1, Johnson's Affid., p. 3; Doc. 58-1, Johnson's Affid., p. 3. Lieutenant Johnson stated that "[t]he only reason why Mr. Bossio was not initially placed into a maximum security cell unit [per standard procedures followed by the Russell County Jail,] was because all 32 maximum security cell units were occupied on the date of his incarceration." *Id.* *See also* Doc. 58, Defs' Third Supplemental Report, p. 6; Doc. 58-2, Russell County Sheriff's Department policies. In addition, the evidentiary materials, including numerous inmate request and grievance forms, indicate that Bossio had "problems" with several unidentified inmates in the K-block, that the inmates in I-block and K-block watched each other through the window, and that he did not wish to be in the same cell block as inmate Joe Brown. Thus, the continued confinement of Bossio in a maximum-security cell unit was reasonably related to the legitimate government interest of ensuring the safety of the inmates.

Given that there is no genuine dispute of material fact with respect to Bossio's claim that his continued confinement in the max dorm violated his constitutional rights, entry of summary judgment in favor of the defendants is appropriate.

5. Failure to Protect

To the extent Bossio asserts that the defendants acted with deliberate indifference to his safety by placing him in a cellblock where he feared Joe Brown or other inmates would attack him, his claim is unavailing. "A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotations and citations omitted). Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it. *Id*. at 828. A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. "Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of . . . the prison staffs and administrative personnel. . . . They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). The Eleventh Circuit has, however, "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety. *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990)[.]" *Purcell ex rel. Est.*

*of Morgan v. Toombs Cty., Ga.*, 400 F.3d 1313 (11th Cir. 2005). "Only '[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment.' *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).'" *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1028–29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' . . . ***[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment***."

*Farmer*, 511 U.S. at 837–38 (emphasis added); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834–38, 114 S. Ct. at 1977–80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324–25, 115 L. Ed. 2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted). Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id*.

Consequently, to proceed beyond the properly supported motion for summary judgment filed by the defendants, Bossio must first demonstrate an objectively substantial risk of serious harm existed and "that the defendant[s] disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014), citing *Caldwell*, 748 F.3d at 1100. If he establishes these objective elements, Bossio must then satisfy the subjective component. To do so, Bossio "must [show] that the defendant[s] subjectively knew that [he] faced a substantial risk of serious harm. The defendant[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "particular threat or fear ***felt by [the] [p]laintiff***." *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (emphasis added). Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also draw that inference." *Id*. at 1349 (quotations omitted).).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005).

Bossio alleges that, despite repeatedly requesting that Lieutenant Johnson and the administration protect him from inmate Joe Brown and his efforts to "extort" him, jail officials ignored his requests. There is no evidence before the court of "an objectively substantial serious risk of harm" posed by inmate Brown. The evidentiary materials indicate that jail officials moved Bossio into other pods shortly after he reported problems

with other inmates, including Brown. Moreover, although the evidence indicates Bossio expressed his concerns or speculative fears, Bossio failed to identify any specific physical altercations between other inmates which actually occurred. Furthermore, even if Bossio had satisfied the objective component, his deliberate indifference claim nevertheless fails as he presented no evidence that the defendants were subjectively aware of any risk of harm to him posed by Brown or other inmates. *Johnson*, 568 F. App'x at 722 (holding that complaint properly dismissed for failure to state a claim because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed by [inmate-attacker]."); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) ("[W]e readily conclude the district court did not err by dismissing [Plaintiff's] failure-to-protect charge for failure to state a claim. While [Plaintiff] alleged he requested protection from certain inmates and that the defendants knew about his request for protection from his original cellmate . . . , he did not allege that the defendants had notice that he was in danger from . . . [a different] inmate who attacked him. Simply put, the allegations of [Plaintiff's] complaint do not show the requisite subjective knowledge of a risk of serious harm, and, thus, do not state a claim for deliberate indifference resulting from a failure to protect. . . . Put another way, because [Plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him . . . and failed to take protective measures, his claim fails."); *Johnston*, 135 F. App'x at 377 (holding that defendants were entitled to summary judgment because Plaintiff provided no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [inmate attacker]" and "introduced no evidence indicating that he

notified [the defendants] of any particularized threat by [his attacker] nor of any fear [he] felt [from this particular inmate].”); *see McBride v. Rivers*, 170 F. App’x 648, 655 (11th Cir. 2006) (holding that district court properly granted summary judgment to the defendants as Plaintiff “failed to show that the defendants had subjective knowledge of a risk of serious harm” because plaintiff merely advised he “had problems” with fellow inmate and was “in fear for [his] life.”); *Chatham v. Adcock*, 334 F. App’x 281, 293–94 (11th Cir. 2009) (Where Plaintiff did “not identif[y] any specific ‘serious threat’ from [fellow inmate]” or report any such threat to the defendants, mere “fact that [attacker] was a ‘problem inmate’ with ‘violent tendencies’ simply ‘does not satisfy the subjective awareness requirement.’”). In light of the foregoing, summary judgment is due to be granted in favor of defendant Johnson and Taylor on the claim alleging they acted with deliberate indifference to Bossio’s safety.

## V. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge as follows:

1. The defendants’ motion for summary judgment be GRANTED.
2. Judgment be GRANTED in favor of the defendants.
3. This case be dismissed with prejudice.
4. Costs be taxed against the plaintiff.

On or before **July 15, 2019** the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this the 1st day of July, 2019

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE